**AMERICAN VISUALS CORPORATION,**
Plaintiff-Appellee,

v.

**Frederick A. HOLLAND and Sam Schwartz, Defendants-Appellants.**

No. 75, Docket 25100.

United States Court of Appeals
Second Circuit.

Argued Nov. 13–14, 1958.

Decided Dec. 12, 1958.

Joseph M. Cohen, New York City (Charles B. Seton and Rosen & Seton, New York City, on the brief), for plaintiff-appellee.

Armand E. Lackenbach, New York City (Burton Perlman, New York City, on the brief), for defendants-appellants.

Before HINCKS, LUMBARD and MOORE, Circuit Judges.

LUMBARD, Circuit Judge.

The principal question for decision is whether a cartoon booklet entitled "It Can't Happen To Us," dealing in story form with traffic accidents and published by defendant Frederick A. Holland, a

former employee of plaintiff, American Visuals Corporation, infringed a similar booklet copyrighted by the company under the title of "Killer In The Streets." Judge Murphy held that there was infringement and that defendant Holland misused confidential information imparted to him during his employment by American Visuals. 162 F.Supp. 14, 15. We find ample support in the record for the judgment entered in the Southern District of New York and accordingly we affirm the judgment for $5,000 damages, $1,500 counsel fees, and costs.

Although the parties differ as to inferences and conclusions to be drawn from the facts, the basic facts are virtually undisputed and may be summarized briefly.

American Visuals Corporation has been engaged in the business of creating, designing, producing and selling special purpose booklets of a visual nature for industrial purposes. In 1950 its president, William Eisner, created an illustrated cartoon booklet on highway safety first entitled "Sudden Death," and later changed to "Killer In The Streets." Attempts to sell this in dummy form were unsuccessful. Distribution was restricted to the few people who were solicited. The dummy form, in black and white, portrayed by cartoons the automobile accidents of a family composed of a father, a mother and their teen age son. The father caused a fatal accident by speeding and hogging the road. The mother was an inattentive driver who caused a rear end collision with her car, and then a few minutes later ran down a pedestrian. The son raced downhill and, when the brakes failed to work, crashed into a truck killing himself and two companions.

Obviously the mere idea of depicting the more common kinds of automobile accidents in the form of a story in cartoon form was not copyrightable. But it is plaintiff's claim that it validly copyrighted the means of expressing this idea in the form of pictures and dialogue and arrangement built around a road hog father, an inattentive mother, and a teen age son unconcerned with mechanical imperfections, and that this copyright was infringed by defendant's copying.

Holland was employed by American Visuals in February 1952 as a salesman and "director of publications" and commencing in August 1952 he attempted to interest various casualty insurance companies in "Sudden Death." He called on Mr. N. P. Browne of the Aetna Casualty Group, who thought the idea had merit and suggested a change of name and certain improvements. Eisner then changed the name of the booklet to "Killer In The Streets" and under that name it was copyrighted on September 8, 1952. At the same time the defendant, Sam Schwartz, employed from November 1950 as plaintiff's art director, was directed to clean up the art work. Thereafter several hundred copies of "Killer In The Streets" were photostated in dummy form and Holland took them to an insurance convention where 112 were distributed. Following this Holland interested Thoman N. Boate of the Association of Casualty and Surety Companies. Boate's budget at that time did not permit him to purchase the booklet but he sent copies of it to each of the Association's members.

On October 1, 1953, several weeks after Holland had secured plaintiff's agreement to eliminate from his employment contract a covenant which precluded him from competing during six months following termination of his employment, Holland gave notice of termination effective October 31. He then opened his own office on November 1, notified Boate that he was in business for himself, and in the third week of November Boate asked him to produce a booklet about traffic accidents.

To make up the booklet requested by Boate, Holland then engaged Schwartz, who had left plaintiff's employ in early September to set up his own business as a commercial artist. Schwartz testified that he could not remember whether, during his talks with Holland about the

booklet and what it should contain, Holland had had with him a copy of "Killer In The Streets." Schwartz admitted that on his deposition he had testified that he saw "Killer In The Streets" while he was working on "It Can't Happen To Us," the booklet sold and copyrighted by Holland. In view of Schwartz's testimony and because of the close similarity of the two booklets, Judge Murphy's finding that Schwartz had "Killer In The Streets" before him while working on "It Can't Happen To Us" is well supported by the record.

"It Can't Happen To Us" was produced in two or three days and on December 2, 1953 Boate sent Holland an order for 100,000 copies. Altogether Holland sold to the Association and to Western Electric and other companies a total of 319,000 copies for which he grossed $12,610. After paying Schwartz $1,800, on which Schwartz made a profit of $600 to $800, Holland made a profit of $6,595.

After commencing this action in June 1954 for copyright infringement and misuse of confidential information, the plaintiff moved immediately for a preliminary injunction. In an opinion reported at D.C., 126 F.Supp. 513, 514, Judge Dawson, in August 1954, denied the preliminary injunction and we affirmed 2 Cir., 219 F.2d 223. The case came before us a second time after Judge Sugarman had granted the defendants' motion for summary judgment on the ground that no publication had taken place and that the form of the work rendered it not copyrightable. We reversed, 2 Cir., 239 F.2d 740. Thus the case is now before us for the third time to review Judge Murphy's findings of infringement and breach of confidential relationship.

▆ The appellants here rely heavily upon Judge Dawson's opinion denying a preliminary injunction, in which he stated that "examination of these two books or pamphlets does not sufficiently indicate that the execution of the basic idea in the first book has been plagiarized in the other * * *" Judge Murphy was

clearly correct in holding that he was not bound to find the absence of infringement by reason of Judge Dawson's determination. As Judge Murphy held, the issue before Judge Dawson was not whether there was or was not infringement as a matter of law, but rather whether on the evidence before him he was so convinced that the plaintiff would prevail that he should exercise his discretion and grant a preliminary injunction. Brown v. Quinlan, 7 Cir., 1943, 138 F.2d 228, 229. His decision, and our affirmance of it, meant only that within his appropriate discretion he was not so convinced.

Moreover, Judge Murphy was correct in relying on Dictograph Products Co. v. Sonotone Corp., 2 Cir., 1956, 230 F.2d 131, which alone justified his exercise of independent judgment. Finally, even if we agreed, as we do not, that the judgment below cannot be sustained on the ground of infringement of copyright, we would affirm on the independent ground of abuse of a confidential relationship. We do, as appellant urges that we should, accord Judge Dawson's opinion all appropriate weight taking into account the circumstance of its rendition upon a motion for preliminary restraint.

On the issue of infringement we agree with Judge Murphy that Holland has so extensively copied and appropriated the means of expression of the ideas in plaintiff's "Killer In The Streets" that he has infringed the plaintiff's copyright. It is quite true that the defendant's product is superior in art work and composition, as perhaps might be expected from the finished product in color. But there can be little question that Holland has copied the general style of the cartoon arrangements, the details of the story and the use of the family group even to the kind of accident which happens to each member of the family and much of the dialogue that goes with it. A listing of some of the more apparent similarities of characters, plot and action establishes this conclusively:

1. Both depict families of father, mother and teen age son.

2. Both picture the father as a speeder and a road hog.

3. Both picture the mother as an inattentive driver.

4. Both picture the son as a speeder careless about his brakes.

5. Both arrange the accidents in the same order.

6. Both tell virtually an identical story about the father and his new car. The father by speeding prevents a car from passing him and causes it to collide head-on with another. Both father episodes end with the father, stunned and penitent, accused by a woman victim of the collision.

7. Both show the mother driving with a friend, talking and unmindful of traffic signals and other cars. In both the mother has two accidents; first the mother's car is rammed because she stops late after passing a red light; second the mother, still inattentive, runs down a pedestrian.

8. Both tell the same story about the teen age son who looks at the booklet and thinks it does not apply to him. In both the son is advised by a gas station attendant, who is smoking a pipe, that the car is unsafe. In both the son pays no attention and takes two other teen agers, a boy and a girl, for a ride. In both he speeds downhill, his brakes refuse to respond, he smashes into a truck and he and his companions are killed.

■ From the beginning to the end of each booklet the points of similarity are continuous and striking. Almost every idea and means of expression has been copied in its essence. In such a case it is no defense to claim that the infringing booklet is more attractive and more saleable. If this were a defense, one could pirate the means of expression just before the work is perfected for sale, do a more finished bit of art work, and then claim that what has been appropriated and sold is different by virtue of the sale. Judge Murphy found, and the record here shows, that that is what Holland did.

■ Obviously the value of plaintiff's work has been very materially diminished by defendant's sale of "It Can't Happen To Us" to the very people who had expressed an interest in the plaintiff's booklet. Thus the record fully supports Judge Murphy's findings that the plaintiff was entitled to an injunction and damages under 17 U.S.C. § 101.

■ The record also amply justifies Judge Murphy's finding that Holland had breached his fiduciary trust to the plaintiff by using, for his own purposes and in competition with the plaintiff, the confidential information regarding "Killer In The Streets" which he had acquired while employed by American Visuals. Franke v. Wiltschek, 2 Cir., 1953, 209 F.2d 493. Judge Murphy absolved Schwartz on this cause of action and from that ruling no appeal has been taken.

■■ The award of $5,000 damages was well within the power of the court as the record shows that Holland's profit was $6,595 and Schwartz's was between $600 and $800. Judge Murphy could have awarded damages up to $7,395, but he chose to grant the lesser statutory amount as he had the discretion to do. F. W. Woolworth Co. v. Contemporary Arts, 1952, 344 U.S. 228, 234, 73 S.Ct. 222, 97 L.Ed. 276. The award of $1,500 for counsel fees was very moderate as "a reasonable attorney's fee" under 17 U.S.C. § 116, in view of the history of this case.

The judgment is affirmed.