**NATIONAL COUNCIL OF YOUNG IS-RAEL, INC. (substituted in place of Unity Sewing Supply Company, Inc. on August 3, 1972), Plaintiff,**

v.

**The FEIT COMPANY, INC. and Israel Feit, Defendants.**

**No. 66 Civ. 4501.**

United States District Court, S. D. New York.

Sept. 13, 1972.

## OPINION
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWARD WEINFELD, District Judge.

This action was commenced by Unity Sewing Supply Co., Inc. (hereafter "Unity") charging the defendants, The Feit Company, Inc. and its principal stockholder and executive officer (hereafter jointly "Feit") with copyright infringement[1] and unfair competition.[2] After the trial had been concluded, it appearing that Unity had sold all its assets one day before the commencement of this action to the National Council of Young Israel, the Court on motion ordered the Council substituted as plaintiff as the real party in interest.[3] Unity has continued to function as a division of the National Council.[4]

Unity is a wholesale manufacturer, importer and distributor of sewing machine parts and supplies and sells its products to about 1,000 dealers who in turn sell to garment manufacturers. The defendants and two other firms are its principal competitors. All four firms operate from and are located within a single block in the Borough of Manhattan, New York City. The customers whose trade plaintiff and its competitors solicit are located in large cities throughout the United States and their patronage is solicited principally through circulars, monthly bulletins and catalogs;

S. C. Yuter, New York City, for plaintiff.

Herbert Zelenko, New York City, for defendants.

1. 17 U.S.C. § 101.

2. 28 U.S.C. § 1338.

3. The alleged infringing conduct of defendants occurred during March and July-August, 1966. The bill of sale was executed on December 28, 1966; the action was commenced on December 29, 1966. The bill of sale to the National Council conveyed all of Unity's assets "including, but not limited to its corporate name, trade name, . . . property listed in Schedule 'A' . . . and any and all other property wherever located." Schedule "A," in addition to specifically enumerated property, also included "all other items of personal property owned by [Unity]." This comprehensive and unrestricted conveyance of Unity's property was sufficient to include the existing causes of action for infringement of copyright. See George W. Luft Co. v. Zande Cosmetic Co., 142 F.2d 536, 541–542 (2d Cir.), cert. denied, 323 U.S. 756, 65 S.Ct. 90, 89 L.Ed. 606 (1944).

4. Defendants' further challenge to the maintenance of this suit because Unity, following the assignment to the National Council, was dissolved as a corporation is likewise without substance. See Unison Realty Corp. v. RKO Theatres, Inc., 35 F.R.D. 232 (S.D.N.Y.1964); 7A C. Wright & A. Miller, Federal Practice and Procedure § 1958, at 664–65 (1972).

in some instances a salesman calls on the trade.

Unity in 1963 and 1966 published catalogs which were widely distributed to the trade, advertising some 300 and 900 items respectively. During the interim, it published and mailed advertising circulars styled "Monthly Bulletins" to its customers to apprise them of newly available items and to remind them of the availability of previously advertised items. Each such publication was duly registered with the United States Copyright Office and has been printed, published and distributed (with one exception noted hereafter) with the requisite copyright notice in conformity with the provisions of Title 17, United States Code, pertaining thereto. The registrations included:

(1) "Unity Monthly Bulletin, 1965," published since October 5, 1965, for which Certificate No. K–194949 was issued (hereafter "Unity October 1965 Bulletin"), of which 5,000 copies were distributed;

(2) "Unity Master Catalog—1967," published since April 5, 1966, for which Certificate No. A–860683 was issued (hereafter "Unity's 1967 Catalog"), of which approximately 10,000 copies were distributed; and

(3) "Unity Catalog 1963," published since January 14, 1963, for which Certificate No. A–605694 was issued (hereafter "Unity 1963 Catalog"), of which about 5,000 copies were distributed.

▮ The foregoing copyrights, owned by plaintiff, protected each illustration contained in the respective catalogs and bulletin as if each had been separately copyrighted.[5] Plaintiff charges that Feit infringed the copyrights in the following respects:

(1) By having published and distributed to the trade its "Monthly Bulletin March 1966," which included a photographic illustration captioned "Feitsew Variable Speed Cloth Pullers," which is a copy of the "Artwood Variable Speed Cloth Pullers" illustration contained in Unity's October 1965 Bulletin;

(2) By having published and distributed to the trade its "Monthly Bulletin JULY/AUGUST 1966," which included illustrations which photographically copied (a) compensating hemming feet, (b) needle guards, (c) Teflon, contained in "Unity's 1967 Catalog"; and

(3) By having published in its same "Monthly Bulletin JULY/AUGUST 1966" an illustration of a "Balance Wheel Fan" copied from plaintiff's "Unity 1963 Catalog."

As to the last, Unity, in its July 1964 Bulletin, published without a copyright notice, included an illustration of a balance wheel fan contained in its 1963 catalog; consequently Unity has limited its claim of infringement to the first four items above enumerated.

There can be no question but that defendants' photographic illustrations of those four items are exact replicas of those that originally appeared in Unity's copyrighted catalogs and advertising circular; nor is any question raised as to their copyrightability.[6] The defendants, however, essentially seek to avoid judgment upon a claim that Unity placed its copyrights in the public domain or abandoned them when it gave oral permission to a number of its customers to print and publish the copyrighted material which included the four items at issue, which defendants copied and now claim were derived from such customers' catalogs or bulletins, some of which were

---

5. 17 U.S.C. § 3; Markham v. A. E. Borden Co., 206 F.2d 199, 201 (1st Cir. 1953); King Features Syndicate v. Fleischer, 299 F. 533, 535 (2d Cir. 1924).

6. *See* Blumcraft v. Newman Bros., 337 F. Supp. 859 (S.D.Ohio 1971); Hedeman Prods. Corp. v. Tap-Rite Prods. Corp., 228 F.Supp. 630, 633–634 (D.N.J.1964); 17 U.S.C. § 5(j); *cf.* Avedon v. Exstein, 141 F.Supp. 278 (S.D.N.Y.1956).

published without copyright notices. The defendants further claim that they had the permission of such customers to print, publish and use the items in question. The evidence, however, establishes that Unity's permission to its customers to borrow freely from its advertising materials was granted as a matter of good will to its customers but upon condition that they would affix a proper copyright notice in any publication that included items from plaintiff's copyrighted material,[7] and such restricted permission embraced the four illustrations here in suit: the cloth puller, compensating hemming feet, needle guards and Teflon.

In all, such permission was granted to five sewing machine part dealers. All grantees except one, Kennedy Sewing Machine Co., complied with the terms of the grant and published the material in their catalogs with the grantor's copyright notice. Kennedy, however, in its 1966–1967 catalog, which included all the alleged infringing items, failed to publish the required copyright notice to protect Unity's rights. When Unity, after publication, learned that Kennedy had failed to abide by the arrangement under which permission was granted, it advised Kennedy that it would no longer permit it to do so, although Kennedy repeated the publication again in 1971–1972, again without a copyright notice but long after the infringing events charged to the defendants herein.

■ It is well established that abandonment of rights gained under the copyright law must be evidenced by some overt act indicating a purpose to surrender the rights and to allow the public to copy.[8] The fact that a copyright owner in its own interest and to gain the favor of its customers and their good will grants permission to use copyrighted material upon condition that its rights be protected by the grantee's proper copyright notice by no means manifests a purpose to abandon one's copyrights—to the contrary, it indicates a positive and continuing purpose to maintain one's rights.[9] So, too, the fact that Unity published and distributed all its material, 5,000 copies of its October 1965 Bulletin, 10,000 copies of its 1967 Catalog, and 5,000 copies of its 1963 Catalog with copyrighted notice affixed, clearly indicates a purpose to preserve its copyrights.[10]

■ That Kennedy violated the terms of its permission to use Unity's copyrighted material does not reflect an intent by Unity to abandon its rights;[11] indeed there is no basis for any claim that Unity was in any way responsible for the absence of copyright notices on Kennedy publications,[12] nor does the fact that it failed to police Kennedy to assure that it observed the terms of the grant indicate a purpose to surrender its copyrights.[13]

Finally, the 1966–1967 Kennedy catalog contained hundreds of illustrations other than those in suit which constitute much new matter. 17 U.S.C., section 7 provides that the republications of works with new matter "shall not affect the force or validity of any subsisting copyright upon the matter employed or any part thereof." Thus the publication of the Kennedy catalogs without

---

7. *See* Nom Music, Inc. v. Kaslin, 343 F.2d 198 (2d Cir. 1965) ; 17 U.S.C. § 7.

8. National Comics Publications v. Fawcett Publications, 191 F.2d 594, 598 (2d Cir. 1951). See also Imperial Homes Corp. v. Lamont, 458 F.2d 895, 898 (5th Cir. 1972).

9. Rushton v. Vitale, 218 F.2d 434, 436 (2d Cir. 1955).

10. *Cf.* National Comics Publications v. Fawcett Publications, 191 F.2d 594, 598 (2d Cir. 1951).

11. *See* American Press Ass'n v. Daily Story Publishing Co., 120 F. 766, 768 (7th Cir. 1902).

12. *Cf.* H. M. Kolbe Co. v. Armgus Textile Co., 315 F.2d 70 (2d Cir. 1963) ; Irving J. Dorfman Co. v. Borlan Indus., Inc., 309 F.Supp. 21, 23–25 (S.D.N.Y.1969).

13. *Cf.* Modern Aids, Inc. v. R. H. Macy & Co., 264 F.2d 93, 94 (2d Cir. 1959).

the copyright notice did not work a forfeiture of Unity's copyrights of the items included in the Kennedy publication.[14] In sum, the defendants have failed to establish that plaintiff by any affirmative or overt act on its part manifested an intention to abandon its copyrights.

■ There remains, however, the fact issue as to whether the defendants copied Unity's illustrations contained in its copyrighted publications or those contained in the uncopyrighted publication put out by Kennedy, all or part of which the defendants contend they had Kennedy's permission, as well as that of other grantees, to copy and that these were the source of the copied items.

The evidence is most compelling with respect to the variable cloth speed puller published by defendants in their March 1966 monthly bulletin. Feit, the defendant company's president, testified that for its preparation and printing he gave to the printer catalogs of Unity's customers, including Kennedy, which contained plaintiff's cloth puller illustrations. Feit categorically denied he had in his possession Unity's copyrighted October 1965 monthly bulletin or that he had given it to the printer. This testimony met a challenge from documentary evidence. There was received in evidence the "paste-up" or "mechanical" consisting of sheets of cardboard onto which were pasted advertisements and parts thereof obviously clipped from other bulletins or catalogs. The printer testified that Feit had supplied the clippings of various pictures that were photographed or used for the final printing. Specifically he identified the variable speed cloth puller illustration, included in the defendants' final March 1966 print as "Feitsew Variable Speed Cloth Pullers," as having been supplied by Feit. A partial upturning of this clipping reveals beyond peradventure of doubt that it was clipped from "Unity's October 1965 Bulletin." The reverse side corresponds to the reverse side of "Unity's October 1965

Bulletin" at the point where the cloth pullers are shown; the clipping in no respect corresponds to the reverse side of the cloth puller illustrations in the Kennedy uncopyrighted or other illustrations which Feit testified were the sources of those used by the printer. The printer further testified that Feit gave him the clipping with the name "Feitsew" to be substituted for "Artwood," the name which appeared in Unity's copyrighted bulletin. There can be no doubt then that defendants' March 1966 Bulletin, containing the cloth puller illustration of which 1,000 copies were printed, was copied from plaintiff's October 1965 Bulletin and infringed upon its rights.

The conclusive evidence with respect to that item forecloses acceptance of Feit's like version as to the source of the three remaining items contained in defendants' JULY/AUGUST 1966 Bulletin and permits the inference that they too were copied from plaintiff's copyrighted illustrations and from no other source. In this instance, another printer employed by Feit testified (contrary to Feit) that a complete paste-up containing the items in issue was submitted already prepared by Feit. I find the printer's testimony credible and accept it. Moreover, the infringements occurred about March and July/August 1966, which were prior to the issuance of the Kennedy publication. Finally, it is significant that although Feit claims it had permission from Kennedy and others to use all or any part of their catalogs or bulletin, no witness was called to support this claim.

Realistically, the damages, if any, sustained by plaintiff are minimal. Plaintiff and its three competitors appeal to the same trade, the potential customers are known to each competitor, who employs the same method of advertising—to wit, principally the distribution of catalogs or bulletins to potential customers; occasionally a salesman is employed to call on the trade. The cat-

14. *Cf.* Siewek Tool Co. v. Morton, 128 F.Supp. 71 (E.D.Mich.1954).

alogs contain hundreds of items, and the four items involved in this suit represent a miniscule portion of the total contained in plaintiff's catalog. The catalogs or bulletins differ in the layout of the items included therein, which is sometimes referred to as art work. The items in plaintiff's or a competitor's catalog usually include photographs of material purchased here or abroad; and in some instances the items themselves are photographed for inclusion in the catalog, and in others they are utilized from art work or catalogs of manufacturers from whom plaintiff purchased the item. The four competitors, including the defendants, appear to have functioned, until the filing of this suit, in a state of peaceful coexistence. Indeed, permission has been granted by one to the other to copy items appearing in copyrighted material; plaintiff itself received such permission from one of its competitors.

■■ There is, upon the record, substantial doubt that any discernible damage was in fact sustained by plaintiff. The advertising was not aimed at the general public, where attractiveness of display may have some impact, but to known purchasers to whom price and service are the primary consideration, particularly where identical products are concerned. Publications of competitors other than plaintiff and defendants contain the four items which are the subject of the infringement by defendants. In the circumstances here presented, the Court, which is vested with a broad discretion in determining the damages to be assessed,[15] may award such damages as appear just rather than attempt to compute actual damages or loss of profits, if any, which the testimony indicates are difficult of determination.[16]

Moreover, since there are "uninjurious and unprofitable invasions of copyright,"[17] invocation of the Court's discretion under 17 U.S.C., section 101(b) appears to be an appropriate sanction to discourage infringement and secure enforcement of the copyright policy. Since there were four separate illustrations that were copied from plaintiff's copyrighted material, the Court awards total damages in the sum of $1,000.[18]

■ The request for a discretionary allowance of counsel fees is denied. Unfortunately, this litigation was unduly protracted by bickerings of the attorneys, each of whom levelled charges against the other and foreclosed an amicable disposition of the matter. The parties, of course, had an absolute right to a trial on the merits to vindicate their respective positions, but the fact that they insisted upon this right did not automatically require an allowance of counsel fees to the prevailing party.[19]

The judgment to be entered shall contain a provision that the defendants deliver up for destruction all copies of the offending material, if any is still in existence.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.

15. *Cf.* F. W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 231–232, 73 S.Ct. 222, 97 L.Ed. 276 (1952).

16. 17 U.S.C. § 101(b). *See* Alouf v. Expansion Prods., Inc., 417 F.2d 767 (2d Cir. 1969) (per curiam); Peter Pan Fabrics, Inc. v. Jobela Fabrics, Inc., 329 F.2d 194, 197 (2d Cir. 1964); Morser v. Bengor Prods. Co., 283 F.Supp. 926 (S.D.N.Y.1968).

17. F. W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 233, 73 S.Ct. 222, 97 L.Ed. 276 (1952).

18. *Cf.* Hedeman Prods. Corp. v. Tap-Rite Prods. Corp., 228 F.Supp. 630 (D.N.J. 1964).

19. *See* 17 U.S.C. § 116; *cf.* Peter Pan Fabrics, Inc. v. Jobela Fabrics, Inc., 329 F.2d 194, 197 (2d Cir. 1964); Orgel v. Clark Boardman Co., 301 F.2d 119, 122 (2d Cir. 1962).