**JUDSCOTT HANDPRINTS, LTD.,**
Plaintiff,

v.

**WASHINGTON WALL PAPER CO., INC.**
**and Foil Fashion, Inc., Defendants.**

**No. 74 C 384.**

United States District Court,
E. D. New York.

April 22, 1974.

---

Amster & Rothstein by Daniel Eben-stein, New York City, for plaintiff.

Kirschstein, Kirschstein, Ottinger & Frank by Peter T. Cobrin, New York City, for defendants.

## MEMORANDUM OF DECISION

NEAHER, District Judge.

In this copyright infringement action plaintiff, Judscott Handprints, Ltd. (Judscott), applied by order to show cause to preliminarily enjoin defendants Washington Wall Paper Co., Inc. (Washington) and Foil Fashion Inc. (Foil) from printing, distributing, selling or otherwise dealing with alleged infringing copies of Judscott's MIRAGE design for which it holds a prima facie valid copyright, No. Gp 68576. The court's jurisdiction is grounded on 17 U.S.C. § 112 and 28 U.S.C. § 1338.

Following the issuance of a temporary restraining order on consent, a hearing on the preliminary injunction application was held March 29, 1974. By agreement of the parties, in addition to affidavits and physical evidence submitted, oral testimony was presented in the form of depositions taken for that purpose. The court, after considering all submissions and viewing wall covering and fabric samples containing the copyrighted MIRAGE design and the accused infringing design, concluded that plaintiff is entitled to a preliminary injunction. Accordingly, an order granting the requested relief was entered April 11, 1974. The court's findings of fact and conclusions of law supporting that order are set forth below.

Plaintiff Judscott is engaged primarily in the business of designing and hand screen printing high quality, expensive wall coverings which are sold through decorators and interior designers. A wholly-owned subsidiary of Judscott, Dover Fabrics, Inc. (Dover), is engaged

primarily in the business of designing and hand screen printing fabrics which are sold on a less exclusive and less expensive basis. Each company does some work in the other's specialty, but only within its own price range. Both Judscott and Dover have the same place of business and are run by the same corporate officers, Harold and Sally Lefkowitz.

Defendant Foil, a Pennsylvania corporation located in Philadelphia, manufactures wall coverings for sale throughout the United States. Defendant Washington is a New York corporation which sells Foil's wall coverings through a showroom in this district. Imperial Textile Company of New York, Inc. (Imperial) is engaged in the business of converting undyed fabric into decorative prints and solids. Imperial is not involved in this action but appears to have played a part in the events culminating in it.

Judscott became owner of the MIRAGE design by purchase from a freelance artist, Edrea Liebelson, obtaining a statutory copyright on it shortly thereafter, March 3, 1969. The design has been available through Judscott since 1969, has been very popular, and on Judscott's wallpaper retails for $27–$30 or more per roll, depending on the medium used.

Sometime prior to the spring of 1972, another as yet unidentified designer sold a slightly modified version of the MIRAGE design to Bernard Levine, president of Imperial. Imperial, unaware of the MIRAGE copyright, commenced its own copyright application on its BAMBAY design (sometimes referred to as the ZENDA design), which appears to be identical in almost all significant respects with MIRAGE, save the addition of detailing to the bamboo poles that are only outlined in the MIRAGE design.[1] In the spring of 1972, Sally Lefkowitz saw the BAMBAY design in fabric on display in a Miami showroom. Subsequent investigation by her attorneys, counsel in this case, revealed that the BAMBAY design was printed by Imperial on its fabric.

Though Imperial's infringing activity is not the basis of this action, what transpired thereafter is nonetheless important to this case. Judscott's counsel promptly commenced informal measures to stop the sale of the Imperial fabric, contending it infringed the MIRAGE copyright. The controversy was resolved, however, on an amicable basis for reasons indicated below. On November 15, 1972, Judscott and Imperial entered into a licensing agreement permitting Imperial to continue to sell the BAMBAY pattern for a specified period. It is plaintiff's alleged conduct in connection with this agreement that is at the heart of defendants' resistance to a preliminary injunction in this case.

Plaintiff's motivations for pursuing a private settlement instead of injunctive relief in the Imperial case are basically uncontroverted. Though Sally Lefkowitz testified she did not like the changes made to MIRAGE by BAMBAY and would have preferred to have the design removed from the market entirely, Judscott decided against pursuing this legal remedy for these reasons: (1) Imperial's apparently innocent infringer status; (2) the alleged severe economic hardship an injunction would have visited upon Imperial; (3) the absence of exact duplication in BAMBAY; (4) the modest royalty revenue to be provided by a licensing agreement; and (5) Imperial's willingness to pay damages for profits received on past BAMBAY sales.

The agreement reached seems to bear out plaintiff's contention that it was designed to ensure Imperial could meet commercial commitments undertaken

---

1. The original MIRAGE design is a contemporary one and contemplates a rectilinear grid of bamboo poles of varying sizes and colors, superimposed on a background of 45° stripes in the same colors which alternate direction in adjacent bamboo "squares." The stripes also vary in width and spacing, and visible between them are stripes of the silver foil or other medium upon which the overall design is superimposed.

prior to Judscott's intervention, while simultaneously removing any incentive for Imperial to expand its sale of the BAMBAY pattern. While Judscott released Imperial from claims of copyright infringement, Imperial bound itself to put a " © Dover" copyright notice "on all products sold by it bearing the MIRAGE design." Moreover, it was expressly stipulated that "[t]his written agreement represents the entire agreement between the parties and may not be modified except in writing signed by both parties." The agreement also provided for termination and did in fact terminate on December 31, 1973. [2]

The fabric Imperial had been selling in the spring of 1972 bore the following marking in the selvage:

"SCREEN PRINT COPYRIGHT ® NORFIX SUPER STAIN REPELLENT FINISH ——➤ up ,BAMBAY" [3]

The fabric Imperial sold under the Judscott licensing agreement bore this notice in the selvage:

"© DOVER SCREEN PRINT NORFIX SUPER STAIN REPELLENT FINISH ——➤ up BAMBAY" [4]

We turn now to the role Imperial's BAMBAY design and fabric copyright notice play in this case. Essentially it is defendants' position that Foil's accused wallpaper design was innocently derived from a sample of BAMBAY fabric which bore no copyright notice and was not copied from Judscott's MIRAGE design wall covering. Additionally, defendants contend, Judscott forfeited its copyright protection by sanctioning Imperial's distribution of the BAMBAY fabric without proper copyright notice —conduct defendants characterize as a "fraud on the public." [5]

Foil's vice-president, Arthur Gross, avers that a buyer had come to him with a yellow, green and white swatch of "a bamboo design", suggesting its appropriateness as a wall covering design. In about May 1973, Gross took this fabric to one of his part-time wallpaper designers, Patricia Potts, to plan a wallpaper design. [6] None of the sketches, color designs, or overlays she did are in evidence, but there seems no doubt that defendants' final wallpaper product in evidence [7] was derived from her art work as inspired by the BAMBAY design. Potts, when shown the Judscott wallpaper now in evidence [8] at her deposition, denied ever having seen it before. Gross also denied ever having seen the Judscott print prior to the commencement of this suit.

Whether innocently derived or not, an ordinary visual examination of Foil's wallpaper produces the strong impression that its design, basic medium and

2. During the settlement negotiations, plaintiff's counsel had received oral assurance from Imperial's counsel that Imperial would not sell the accused design during negotiations; the assurance was put into writing on June 23, 1972, and by its terms was effective until the November 15th agreement was reached.

3. Though not apparent from the text, the selvage markings appear in a single line in the fabric. The entire notice is about 18″ long and repeats itself continuously along the selvage with intervening spaces of approximately 3¾″. The fabric pattern is in repeat every 15″ in the same direction as the selvage.

4. Though not apparent from the text, the selvage markings appear in a single line in the fabric. The spacing in the notice is identical to that of the earlier fabric (see note 3 *supra*), except that the somewhat shorter copyright notice allows for more selvage space between the repetitions.

5. Defendants' Memorandum in Opposition to Plaintiff's Motion for a Preliminary Injunction, p. 1.

6. The swatch is in evidence as defendants' Exh. 9 to the Levine deposition. Gross also brought with him a wall covering in the same general theme as the fabric. Plaintiff's Exh. 1 to Potts deposition. This covering is wholly dissimilar in appearance to any of the other fabrics and exhibits, and is considered of no importance on this state of the record.

7. Complaint, Exh. 3.

8. Complaint, Exh. 2.

colors appear, for all practical purposes, to be substantially similar to plaintiff's. The basic medium for each wall covering in evidence is a silvery mylar, not dissimilar in appearance to heavy-duty smooth aluminum foil. The stripes and rectilinear bamboo framework depicted are white and bright yellow, the colors in each design being practically indistinguishable in hue, lightness and saturation from the other. One might venture to say that the Judscott print is slightly more subdued, the print itself covering more of the mylar than does defendants' print, and the latter's mylar being more highly reflective. To the casual observer, a glance at each would reveal little to distinguish them, save the varying widths of the angular striping and the detailing of the bamboo. While closer scrutiny reveals actual design differences of size, spacing and the above-mentioned detailing on the bamboo, these are, in a non-aesthetic sense, relatively insignificant to the structure and repeat of the design as a whole.

Although there is evidence suggesting that Foil's wallpaper design was not actually copied from plaintiff's, there appears to be no real question that it was copied from Imperial's BAMBAY design. Nor is there any question that this occurred during the time when Imperial was under limited license from plaintiff to dispose of its BAMBAY fabric inventory provided it was marked to show copyright in Dover. Defendants, however, make much of the fact that the BAMBAY fabric sample Gross submitted to his designer, Potts, bore no reference to Dover or to any copyright. They also rely on deposition testimony by Levine of Imperial that after the license agreement went into effect on November 15, 1972, he sold some 3300 yards of "unauthorized goods" lacking the Dover copyright notice with the knowledge of Judscott. Finally, defendants urge that when Judscott directed use of the Dover name although the MI-

RAGE design copyright was in Judscott's name as proprietor, that constituted a fraud upon the public.

As to defendants' first point, the BAMBAY swatch in evidence used by Potts does bear selvage markings, without explicit reference to any copyright, as follows:

"SCREEN PRINT NORFIX SUPER STAIN REPELLENT FINISH ⟶ up BAMBAY" [9]

The swatch appears to have been cut from a larger piece of fabric about $\frac{1}{4}''$ to the left of the letter "S" in "SCREEN" and $3\frac{1}{2}''$ to the right of "BAMBAY." Upon juxtaposing the swatch on a larger sample in evidence [10] sold by Imperial under the "© DOVER SCREEN PRINT" copyright, it is abundantly clear even to the untrained eye that defendants' "unnoticed" swatch *could* have been deftly scissored at the appropriate place in the selvage so as to omit the "© DOVER" portion of the copyright notice from the selvage marking above quoted, yet still obtain at least one full pattern repeat.

Second, as to the issue of what happened to the Imperial fabric not *originally* marked with the Dover copyright, Levine's identification of a paid check dated November 15, 1972, sent to Judscott in the sum of $667.40, which was marked "Unauthorized gds. unsold 3337 yds @ .20," is hardly unambiguous confirmation that Judscott knowingly allowed the very design it was seeking to protect to become widely available for anyone to copy. Judscott's evidence on this point points out that (1) the check from Levine went directly to the Judscott accounting department; (2) Sally Lefkowitz did not see the check when it was received, and if she had she would not have regarded the "unauthorized goods" notice on it to mean that Imperial would violate the agreement; (3)

---

9. Though not apparent from the text, the selvage markings appear in a single line in the fabric.

10. The swatch is in evidence as defendants' Exh. 10 to the Levine deposition.

such a sale would be a breach of the agreement; (4) Levine had ample reason to misrepresent the true facts; (5) Sally Lefkowitz checked some of Imperial's goods subsequent to the agreement and found them to bear the required copyright notice; (6) Judscott customers subsequently asked about the new relationship with Imperial evidenced by the notices; (7) Sally Lefkowitz specifically discussed the improperly marked goods with Levine, advising him that, at the least, he would have to rubber stamp his original inventory with the Dover copyright before shipment; (8) Judscott never gave Levine or anyone at Imperial permission to sell any of the infringing fabric without the Dover notice; and (9) the written agreement was never altered.

While none of these statements amounts to a direct denial of Levine's claim that Judscott had knowledge of alleged unauthorized sales, the court finds it difficult to believe, in view of Judscott's overall highly protective course of conduct, that it would or did acquiesce in such sales without even so much as insisting, as it has claimed it did, on at least a rubber stamp change of copyright notice on the unauthorized fabric. In view of this and the ambiguity in the check, the court is unwilling to find, on the present record, that unauthorized sales were made with Judscott's knowledge.

Third, as to the claim of fraud, the record establishes sufficiently that the Dover notice was motivated by entirely proper business considerations. Judscott hoped that the relatively inexpensive Imperial fabric, altered as it was from the MIRAGE design (unfavorably in Judscott's view), would be associated with the less exclusive and less expensive Dover line rather than the high-priced Judscott wall coverings and coordinating fabrics.

Similar elements of damage are evident here if defendants are permitted to sell a low-priced wallpaper or other wall covering duplicating plaintiff's copyrighted MIRAGE design. The record discloses that the retail price of Foil's wallpaper is about half that of Judscott's and the percentage differential at the wholesale level is even greater. Moreover, there is support for the belief that the mere presence of defendants' copy on the market irreparably damages Judscott's reputation with interior decorators and designers as an exclusive supplier, and that the price differential is causing loss of sale.

With the foregoing elaboration of the facts as they now appear, application of settled principles of equitable relief and copyright law are not difficult. The underlying test in a design copyright infringement case is "whether an average lay observer would find a substantial similarity in the designs . . . .", Concord Fabrics, Inc. v. Marcus Brothers Textile Corp., 409 F.2d 1315, 1316 (2 Cir. 1969); Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc., 490 F.2d 1092, 1093 (2 Cir. 1974). See Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487 (2 Cir. 1960). The court has no difficulty finding an infringement in this case based on such a standard. In fact, although defendants do not wholly abandon a claim of noninfringement, the entire thrust of their case is away from such a claim; instead they rely primarily upon the invalidity of plaintiff's copyright, which, if true, would obviate the need for any injunctive relief. To that pivotal issue the court turns.

Defendants attack neither the copyrightability of plaintiff's design nor the legal sufficiency of its 1969 registration. Instead they argue that the copyright, even if initially valid, was somehow forfeited or abandoned in view of the later sale of improperly noticed infringing Imperial fabric. Defendants assert that the Judscott design entered the public domain when Judscott allowed any Imperial fabric to be sold without a designation of Judscott as the proprietor of the copyright. The court cannot accept this view on the present record.

Considering first the Imperial fabric without the Dover copyright, it is

well established that Imperial's publication without the Dover notice does not invalidate the copyright "unless it is shown that such publication occurred by or under the authority of the copyright proprietor." 1 Nimmer on Copyright § 82 (1973).[11] The court is unwilling to find on this record that plaintiff had authorized Imperial's publication as a licensee without a proper notice. In the context of a licensing agreement where the affixing of a proper copyright notice is an express condition, this abandonment theory is of little utility since publication without notice is normally not authorized. In such circumstances, the courts have consistently refused to invalidate the copyright. National Comics Publications, Inc. v. Fawcett Publications, Inc., 191 F.2d 594, 600–601 (2 Cir. 1951); American Press Ass'n v. Daily Story Pub. Co., 120 F. 766 (7 Cir. 1902), appeal dismissed, 193 U.S. 675, 24 S.Ct. 852, 48 L.Ed. 842 (1904); National Council of Young Israel, Inc. v. Feit Company, Inc., 347 F.Supp. 1293, 1297 (S.D.N.Y.1972).

 An abandonment of a copyright requires some overt act by the copyright owner "which manifests his purpose to surrender his rights in the 'work,' and to allow the public to copy it." [12] A licensing agreement containing an express provision of the type evidenced here can hardly be said to be such an act; "to the contrary, it indicates a positive and continuing purpose to maintain one's rights." [13]

Moreover, there is strong authority in this circuit which suggests that in the context of a licensing agreement evincing every intention to limit, insofar as practicable, the infringing sales, publication of improperly noticed copies will not frustrate the very object of the agreement—protection of the copyright.

H. M. Kolbe Co. v. Armgus Textile Company, 315 F.2d 70, 73–75 (2 Cir. 1963). In *Kolbe,* as here, the desire to make the sales came not from the licensor but the licensee who otherwise would have suffered extreme hardship. Under the circumstances the court was unwilling to characterize the licensor's acquiescence in the improper publications as "authorized" within the meaning of 17 U.S.C. § 10. *Id.*

In one sense *Kolbe* is distinguishable in that it involved secondary distribution of the actual infringing goods and not a third product. But copying from a copy puts one in no better position than one copying from the original. Grove Press, Inc. v. Greenleaf Publishing Company, 247 F.Supp. 518, 527 (E.D.N.Y.1965). In any event, the *Kolbe* rationale seems equally applicable to the instant case:

> [T]he copyright proprietor has no affirmative duty to police subsequent distributons of his *own* products, *a fortiori* he has no affirmative duty with respect to subsequent distributions of copies which were never authorized by him to be distributed.
>
> \* \* \* \* \* \*
>
> Without the ability to prevent the complained-of sales, however, Kolbe's alleged "permission" would constitute mere acquiescence in a course of action it was powerless to control. In all events, Kolbe's acquiescence was clearly a part of a larger endeavor to limit infringing sales by [the secondary distributors] insofar as that could be accomplished by an out-of-court settlement with them. 315 F.2d at 74, 75. (Emphasis in original.)

 Moreover in another sense this case presents an even stronger basis for relief. In *Kolbe,* the court was hampered by an express finding that Kolbe,

---

11. The "abandonment" theory was early articulated in Atlantic Monthly Co. v. Post Pub. Co., 27 F.2d 556, 559 (D.Mass.1928), where the court noted that the point had been raised but not decided in Gerlach-Barklow Co. v. Morris & Bendien, Inc., 23 F.2d 159, 163 (2 Cir. 1927).

12. National Comics Publications, Inc., *supra,* 191 F.2d at 598.

13. National Council of Young Israel, Inc., *supra,* 347 F.Supp. at 1297.

the copyright owner, had acquiesced in the sale of unnoticed fabric upon which manufacture had already begun even though the record did not support the contention that such publications were expressly authorized by Kolbe. At best, the evidence in this case favors plaintiff on both of these factual issues, while the burden of proof on the issue of invalidation is on the defendant. Modern Aids, Inc. v. R. H. Macy & Co., 264 F.2d 93, 94 (2 Cir. 1959). *See generally* Nimmer, *supra* §§ 82, 139.2. The court concludes from the foregoing that no clear-cut publication by Imperial without the Dover copyright notice that would invalidate the Judscott copyright has been established.

■ The court next rejects defendant's argument that publication of a Judscott copyright under the Dover name works a forfeiture of the copyright. The cases dealing with the adequacy of notice under the present (1909) Copyright Act appear to uniformly support the view that notice in the name of a subsidiary corporation to the proprietor corporation is not defective where the two corporations, as here, have the same officers, directors and shareholders. National Comics Publications, Inc. v. Fawcett Publications, Inc., *supra*, 191 F.2d at 602–603; Gelles-Widmer Company v. Milton Bradley Company, 313 F.2d 143, 147 (7 Cir.), cert. denied, 373 U.S. 913, 83 S.Ct. 1303, 10 L. Ed.2d 414 (1963); B & B Auto Supply, Inc. v. Plesser, 205 F.Supp. 36 (S.D.N.Y.1962).

Defendant relies on more restrictive formulations under the earlier (1874)

Copyright Act. Mifflin v. R. H. White Company, 190 U.S. 260, 264, 23 S.Ct. 769, 47 L.Ed. 1040 (1903); Record & Guide Co. v. Bromley, 175 F. 156 (Cir. Ct.E.D.Pa.1910). However, the strict compliance rationale of those cases was modified in this circuit many years ago when the court refused to find defective a copyright notice which had omitted the "Inc." from plaintiff's name. Fleischer Studios, Inc. v. Ralph A. Freundlich, Inc., 73 F.2d 276 (2 Cir. 1934), cert. denied, 294 U.S. 717, 55 S. Ct. 516, 79 L.Ed. 1250 (1935). In so holding, the court stated:

> The purpose of the statute's requirement as to notice is to prevent innocent persons who are unaware of the existence of the copyright from suffering for making use of the copyrighted article. A reasonable construction of the statutory requirement shows that the name of the copyright proprietor, is sufficient in form, if it gives notice of copyright to one who is looking for the truth and who desires to avoid infringement. *Id.* 73 F.2d at 277. (Citations omitted.)

It is this rationale which had prompted the results in the more recent cases cited above, and the court agrees that the rule of National Comics Publications, Inc. v. Fawcett Publications, Inc., *supra*, is the sounder view and applicable here, at least on the present record.[14]

There remains only the question of the appropriateness of injunctive relief in this case. Plaintiff has made a *prima facie* showing of a valid copyright and its infringement by defendants. Defendants in turn have failed to meet

---

14. See also Nimmer, *supra* § 86.2.

In so holding, the court does not, as was done in *National Comics*, characterize either defendant as a "bare-faced infringer." 191 F.2d at 603. Instead we observe first that defendants have shown no prejudice in the form of notice given—in fact it was their contention that there was *no* notice on the fabric copied—and second that the actual notice given, in light of the corporate structures involved, would put one acting in reliance thereon in no different position when it turned out that the actual proprietor of the

copyright was another corporation. In our view of this case, this is substantial compliance with the notice sections of the Copyright Act, 17 U.S.C. §§ 10, 19, whether the defendants are "innocent" or not.

Moreover, in light of the suspiciously fortuitous circumstances surrounding the sizing of the sample from which defendant Foil admittedly copied, the court is, at this point, far from satisfied that defendant was merely an innocent person "unaware of the existence of the copyright." *B & B Auto Supply, Inc., supra,* 205 F.Supp. at 39.

their burden of establishing the invalidity of plaintiff's copyright. The court is thus of the opinion that plaintiff has met its burden of convincing the court of the reasonable probability that it will prevail on the merits. Concord Fabrics, Inc. v. Marcus Brothers Textile Corp., *supra,* 409 F.2d at 1317; American Visuals Corporation v. Holland, 261 F.2d 652, 654 (2 Cir. 1958).

 Plaintiff has suggested that once a *prima facie* case of infringement is made out, irreparable harm is presumed and plaintiff is entitled to a preliminary injunction as a matter of law. A *prima facie* case of copyright infringement does entitle plaintiff to a preliminary injunction without a *detailed* showing of irreparable harm. Rushton v. Vitale, 218 F.2d 434, 436 (2 Cir. 1955). "A copyright holder in the ordinary case may be presumed to suffer irreparable harm when his right to the exclusive use of the copyrighted material is invaded." Rice v. American Program Bureau, 446 F.2d 685, 688 (2 Cir. 1971); American Metropolitan Enterprises of New York, Inc. v. Warner Bros. Records, Inc., 389 F.2d 903, 905 (2 Cir. 1968). It has also been suggested that preliminary injunctions "are perhaps more readily granted" in fabric design and other such cases "where delay involved in waiting for a final decree may amount to a denial of any effective relief." Nimmer, *supra* § 157.1, and collected cases in n. 179. *Cf.* Thomas Wilson & Co. v. Irving J. Dorfman Co., 268 F.Supp. 711 (S.D.N.Y.1967). But there is also a residuum of authority that even if a detailed showing of irreparable harm is not necessary, plaintiff must make at least "a *threshold* showing" of such harm. American Fabrics Co. v. Lace Art, Inc., 291 F.Supp. 589, 591 (S.D.N.Y.1968) (emphasis added).

 The court is satisfied that the large disparity in price between defendants' product and plaintiff's is a sufficient indicator of irreparable harm to plaintiff's reputation as a high quality exclusive distributor to warrant the relief requested. Moreover, contrary to defendants' contention, Judscott's activities in licensing Imperial do not preclude an assertion of irreparable harm to its business reputation. And defendants' claim that Judscott must be denied equitable relief because of fraud and trickery in the use of the Dover copyright notice is equally without merit.

As to defendants' contention that money damages should be adequate, it hardly bears mentioning that continuing injury to one's reputation is more easily enjoined than recompensed. Moreover, the court notes, without expressly passing on the question, that there is some authority in this circuit that if plaintiff succeeds on the merits, it may actually be *limited* to injunctive relief if defendants are successful in establishing their innocent intent in copying the copy of plaintiff's design. Barry v. Hughes, 103 F.2d 427 (2 Cir.), cert. denied, 308 U.S. 604, 60 S.Ct. 141, 84 L.Ed. 505 (1939); Nimmer, *supra,* § 101.6 at 382 & n. 50, § 148 at 661 (collecting cases expressing divergent views on the question). If this be the law, defendants' claim of the adequacy of money damages has a doubly hollow ring.

To sum up, the court, pursuant to Rules 52(a) and 65(d), F.R.Civ.P., makes the following findings and conclusions:

## FINDINGS OF FACT

1. Judscott has a *prima facie* valid existing statutory copyright, No. Gp 68576, on its MIRAGE design.

2. Defendants are manufacturing, selling and offering for sale wallpaper products employing a design substantially similar to Judscott's copyrighted design, and are doing so without Judscott's authorization.

3. Defendants' wallpaper design was derived from a fabric design used by Imperial which concededly bore plaintiff's copyrighted MIRAGE design.

4. Judscott did not authorize or have knowledge of the sale of any unauthorized or improperly marked fabric by Im-

perial infringing upon the MIRAGE design.

5. The use of the © DOVER copyright notice in lieu of a proprietary © JUDSCOTT notice on the fabric sold by Imperial was motivated by legitimate business considerations of Judscott and not by a desire to defraud or deceive the public.

6. Judscott may suffer irreparable loss and harm to its MIRAGE design copyright and business pending the final determination of this action if defendants are not preliminarily enjoined from manufacturing, selling or offering for sale any products which infringe Judscott's copyright.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the subject matter and the parties in this action. 17 U.S.C. § 112 and 28 U.S.C. § 1338.

2. Judscott's *prima facie* valid MIRAGE design copyright is infringed by defendants' design, as an average lay observer would find the designs substantially similar. Concord Fabrics, Inc. v. Marcus Brothers Textile Corp., *supra.*

3. Judscott's activities in connection with the Imperial licensing agreement have not vitiated its copyright in any manner. Judscott did not abandon or forfeit its copyright by virtue of Imperial's conduct in connection with the licensing agreement. H. M. Kolbe v. Armgus Textile Company, *supra;* National Comics Publications, Inc. v. Fawcett Publications, Inc., *supra;* National Council of Young Israel, Inc. v. Feit Company, Inc., *supra.*

4. Similarly, the copyright was not abandoned or forfeited by Judscott's own conduct in connection with the licensing agreement. H. M. Kolbe v. Armgus Textile Company, *supra;* Fleischer Studios, Inc. v. Ralph A. Freundlich, Inc., *supra.*

5. A threshold showing of irreparable harm is required to be shown by plaintiff, American Fabrics Co. v. Lace Art, Inc., *supra,* and a sufficient show-

ing of that type has been made in this case.

6. Judscott's conduct in connection with the licensing agreement does not in any way preclude it from seeking the equitable relief requested.

7. A reasonable probability exists that plaintiff will prevail on the merits, and the motion for preliminary injunction should be granted. Concord Fabrics, Inc. v. Marcus Brothers Textile Corp., *supra;* American Visuals Corporation v. Holland, *supra.*