**BLUMCRAFT OF PITTSBURGH,**
Plaintiff,

v.

**NEWMAN BROS., INC., Defendant.**

**Civ. A. No. 5103.**

United States District Court,
S. D. Ohio,
W. D.

Feb. 18, 1971.

David W. Matthews, Taft, Stettinius & Hollister, Cincinnati, Ohio, for plaintiff.

Burton Perlman, Schmidt, Effron, Josselson & Weber, Cincinnati, Ohio, for defendant.

## MEMORANDUM OPINION

HOGAN, District Judge.

This copyright infringement case was commenced in July of 1962. A summary judgment was obtained by the defendant in its favor in this Court, which was appealed to the Circuit, resulting in a reversal and a remand for trial—this in 1967. (6 Cir., 373 F.2d 905.) A trial on the infringement issue, i. e., whether the expression of the ideas of the plaintiff contained on page 12 of its copyrighted 1960 Catalog was infringed by the expression of the ideas of the defendant contained on the cover and page 2 of the defendant's Catalog prepared in 1961. The plaintiff prevailed at that trial in 1968. Following discovery, the damage issue was tried in 1971.

The plaintiff and the defendant are competitors in the ornamental metal railing field. Both have been in business for a long time. Beginning in the early 50's the plaintiff's expression involved in this case began to take shape and has steadily been incorporated in its catalogs ever since. The plaintiff has no salesmen as such. The defendant does. The plaintiff rests its "selling" on the distribution of its annual catalog in various methods to architects and others interested in the field and, of course, in its product. The initiation and development by plaintiff of its "expression" was accompanied, at least as a concomitant, by a steadily marked and great increase in its sales over the 1953–61 period and that has continued. The plaintiff is concededly the "Tiffany" in the field. Its products demand the highest price. The defendant is a competitor and the defendant's pricings are generally substantially lower than the plaintiff's.

As a matter of fact, in the period of interest in this case at least, the defendant did not have available for sale the product with which we deal. The vice in the copying amounts to the representation, via the expression, that the defendant has available at a lesser price what the plaintiff is selling. All of this takes place in the construction field in which architectural specifications constantly include the specification of a given item, such as Blumcraft ornamental railing No. so and so "or equal." The indication of equivalence could be expected to incite some effort to displace the plaintiff's product with the defendant's product.

The defendant, during the period in question, did have salesmen in the sense that it had manufacturers representatives through the country.

There is no question that in this particular area in which architectural specification is of paramount importance, cataloging is a very significant matter vis-a-vis sale. As pointed out earlier by this Court, manufacturers or producers in this field make an annual distribution of their catalogs to something in excess of 20,000 architects via the Sweets distri-

bution described in this Court's Memorandum Opinion of June 25, 1968. In addition, as we learn from the 1971 trial, sellers in this field make a direct distribution to architects and on top of that, make a distribution through American Architectural Institute. Architects as a matter of course keep at ready hand the Sweets collation in the field and also keep at ready hand the collation received through the Institute. The catalogs in the Sweets collation are, by and large, thrown away when the new annual catalog is received in that collation. The catalogs in the A.A.I. collation are generally kept for a couple of years. The significance of that in this case is that while the Newman Catalog held to be infringing was only the 1961 (in the sense of preparation) or 1962 (in the sense of distribution) catalog—its effect was likely to linger for a couple of years.

Something in the neighborhood of 40,-000 catalogs were printed up by the defendant in 1961. In late 1961 approximately one-half of these catalogs were distributed by the defendant through Sweets as a part of the 1962 Sweets Architectural Catalog applicable file. Each catalog contained in two different places representations which have been held by this Court as infringing. In addition, and by the arrangement of the defendant, advertisements of the defendant, including the representation held to be infringing, were contained in an aggregate of seven issues of three different trade magazines. One of these magazines is known as "Building Products" and in each of its issues of November, 1961, January, 1962, and March, 1962 (each issue exceeding 40,000 copies) the infringing expression appeared. The same is true of two issues of a magazine called "Architectural Metals"—one in December of 1961 and one in February of 1962 (each issue exceeding 15,000 copies). The same is true of a trade magazine known as "Ohio Architect" for its issues of January and March, 1962 (each issue exceeding 6,000 copies).

On January 31, 1962, the plaintiff notified the defendant in writing that the

illustrations in the Sweets Catalog File constituted an infringement of the plaintiff's copyright. Cessation and affirmative action was demanded in the letter. In late February of 1962, the defendant, while denying any infringement, indicated that it would be willing to revise its catalog in the future so that there would be no question about it. In March the plaintiff indicated a dissatisfaction unless affirmative action was taken and threatened litigation. The parties continued in correspondence until June, with the plaintiff steadily maintaining infringement and demanding some affirmative action and with the defendant steadily denying infringement and declining affirmative action, which lead to the filing of this case, as we have said, in July of 1962.

Two occurrences of import took place during this correspondence period and, of course, after the defendant was on notice of claimed infringement. In the late spring of 1962, the defendant distributed the other and upwards of twenty some thousand catalogs which it had on hand, i. e., the catalogs containing the material which has been found to be infringing. One of these distributions of upwards of ten thousand was a general mailing by the defendant to architects. The other distribution, also exceeding ten thousand, was to its own representatives, etc.

With respect to the magazine advertisements above described—three of these distributions took place after the defendant was on notice. However, the distributions of the various magazines had, per magazine, been arranged for at one time. Each of the three antedated the notice.

Secondly, while at least one issue of each of the three trade magazines was "on the street" before the January 31, 1962, notice, a careful reading of the notice will show that the notice carefully and "by the fraction" described the catalog claimed to infringe but said nothing about the trade magazine distributions.

Also, as a practical matter, there was nothing much the defendant could do subsequent to receipt of the notice to stop the future distribution of the trade magazines. Its ad was only a small ad, relatively, contained in each magazine and it would appear that any effort that defendant might have made to alter matters in the then future would have been highly unsuccessful. Finally, the effect of trade advertising of this sort in this field is quite minimal—certainly so when compared to the expected effect of catalog distribution.

The statutes applicable to this damage issue are 17 U.S.C. § 101 and 17 U.S.C. § 116. The statute contemplates either actual damage (loss to the plaintiff or profit to the defendant, or both) or what is described as "in lieu" damage.

■ The plaintiff's efforts along the "actual damage" line consisted in the testimony of an expert architect. In brief, he qualified both as an expert in the architectural field and as an expert in the business acquisition field and testified that the value of the plaintiff's copyright as of 1961 or 1962 was the equivalent of all the money that the defendant had spent since 1952 or 1953 in its catalogs which contained the expression; that the "one shot" cataloging by the defendant "opened the hole in the dike" insofar as the value was concerned; that the damage would persist over a ten-year period and total some $200,000.00 at the rate of $20,000.00 a year. The plaintiff's catalogs were multi-page affairs dealing with many things. As the record in this case indicates, the basic claim of the plaintiff was and is that two pages of the defendant's expression infringed one page of the plaintiff's expression. All of the expressions are contained in multi-page catalogs. While the plaintiff's remarkable growth followed the initiation of its expression, this Court simply cannot relate the cost of the reproduction of an unrelated item in the same catalog to the value of the copyrighted expression on another page. Accordingly, it is held that the evidence amounts to speculation and that the plaintiff did not establish either actual

damage to itself or actual profit to the defendant resulting from the infringement.

There is no doubt of the profit part—the defendant never sold a catalog nor the article depicted.

■ One of the factors in this case which must be taken into consideration in any discretionary action is this: There is absolutely no direct proof at all of any actual damage to the plaintiff. For instance, there is no direct proof that any architect or any contractor, as a result of the infringement, became a party to a substitution of the defendant's product for the plaintiff's product. Concededly, such proof would be difficult to obtain. On the other hand, it is not difficult for a fact finder to infer from the actions of the parties to this case, as we do, that some damage did in fact result from the infringement.

This is not unusual in copyright cases. The statute itself is tribute to that. The statute, § 101, provides:

" . . . in lieu of actual damages and profits, such damages as to the court shall appear to be just, and in assessing such damages the court may, in its discretion, allow the amounts as hereinafter stated * * * $1 for every infringing copy made * * * and such damages shall in no * * * case exceed the sum of $5,000 nor be less than the sum of $250, and shall not be regarded as a penalty. * * * the limitation as to the amount of recovery [shall not] apply to infringements occurring after the actual notice to a defendant, either by service of process in a suit or other written notice served upon him."

The "in lieu" damages are related to "the infringement"—or stated otherwise, for example, each infringement will result in damages of not less than $250 nor more than $5,000, unless a particular infringement takes place after notice, in which event the $5,000 ceiling is not applicable.

We have carefully examined the statute, the many cases cited both on brief and in oral argument, some additions, and the applicable text in Nimmer on Copyright and this can safely be said: In the area of "what is one infringement vis-a-vis multiple infringements," any conclusion will find substantial support in the cases. Some cases have held—what seems diametrically opposite to a Supreme Court holding and the statute—that unless the plaintiff shows actual damage or actual profit, no recovery may be had of "in lieu." It took a Supreme Court decision to decide that in lieu damages could be awarded even though the defendant showed that the defendant only made $1.00. F. W. Woolworth Co. v. Contemporary Arts, 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276 (1952).

The Sixth Circuit has not had occasion to deal with the subject unless Weir v. Gordon, 216 F.2d 508 (1954) affirming D.C., 111 F.Supp. 117, be regarded as such—and that is in a very different fact situation. For instance, Schellberg v. Empringham, 36 F.2d 991 (D.C.N.Y. 1929) seems to stand for the proposition that different printings of something printed is determinative. Without belaboring the problem, reference is made to a recent and exhaustive study of the area in Davis v. E. I. DuPont de Nemours & Co., 249 F.Supp. 329 (D.C.N.Y.1966), in which an infringement involving 162 television stations resulted in a damage award of $25,000.00. In that case the Court concluded:

" . . . if the interval between succeeding publications is merely a matter of days, the courts will consider all the publications as one infringing transaction, which requires application of one minimum damage award; conversely, if the time lag between succeeding publications is longer, then each publication will be viewed as a separate infringement * * *. It has also been suggested that the nature of the business transaction giving rise to the infringement is significant, implying that a single integrated business transaction would result in one infringement, while separate and distinct

transactions would result in more than one."

The matter is dealt with at length in Nimmer in Section 154.32.

■ The conclusion of this Court, from an examination of such authorities, is that the principle of "sound discretion" is as applicable to the determination of "what is an infringement" as it is to fixing the range between $250 and $5,000, or in the determination in the broader range present in an "after notice" situation.

■ The distribution to Sweets by the defendant of its catalog material is held to constitute one infringement antedating notice. The distributions of the catalog in 1962 by the defendant, "after notice," to architects on the one hand and representatives on the other hand, of the identical material is held to be one single "after notice" infringement. After all, the determination of whether it is one or two is of no substantial moment, since it was after notice. This distribution was a calculated one in the sense that it was after notice. It was not, however, as deliberate a one as would appear on the surface. As a practical matter, the defendant distributed its catalogs in all years, as it did in the years 1961 and 1962; the catalogs contained a great deal of material in addition to the two pages involved in this case; the distribution was what might be called almost a required business act.

■ As a matter of discretion, it is determined that an award of $2,500.00 damages to the plaintiff for the catalog distribution via Sweets before notice is just. Whether the catalog distributions after notice be regarded as one or two infringements, it is determined that an in lieu award to the plaintiff of $7,500.00 in damages (approximately 33 cents per copy) is just.

■ Coming to the trade journal advertising, and whether that advertising be considered as involving seven infringements or three or one and whether some of the issues be regarded as before or after notice, it is determined that the just overall amount (in the light of the relatively slight import of such advertising) is $2,000.00. This amount satisfies the minimum requirement if the magazine advertising be considered as seven infringements and, in addition, and in respect of the two which took place in March, is consistent with the fact of "after notice" as well as the fact that the defendant could have done little about it.

■ Finally, Section 116 provides that, in actions such as this, full cost shall be allowed to the plaintiff and, in addition, that "the court may award to the prevailing party a reasonable attorney's fee as part of the costs." The evidence adduced by the plaintiff indicates that the actual attorney's fee incurred by the plaintiff to date in this litigation amounts to approximately $30,000.00. The defense does not question the reasonableness of that figure. Nor does this Court. It is not necessary to go into hours, etc.—suffice to say that this case has involved one final proceeding in a district court on summary judgment, one appellate proceeding in the Sixth Circuit, a trial on the merits of the infringement issue in a district court which consumed approximately a week, and a second trial on the damage issue which consumed approximately one and one-half days. Judged by that or other standards, the amount vis-a-vis plaintiff and its counsel is certainly reasonable. Again, the problem is one of discretion and again it is a wide one. The plaintiff has injected into this case some suspicion of deliberateness, e. g., the defendant had done business with the plaintiff for a considerable number of years and drastically reduced its business during the time it was setting up to publish the infringing catalog; the defendant has recently been adjudged a patent infringer in a separate proceeding in this Court; in the past decade the defendant, while not approaching infringement, has continued to copy the changing theme of the plaintiff's expressions, etc. (The latter two items were deemed irrelevant by this Court and still

are.) This Court does continue to adhere to its initial finding that, if anything, the defendant's copying was not deliberate. On the other hand, as has been indicated in the above damage determinations, there were distributions after notice. Just to further complicate the problem, there is no question that after the suit was filed the defendant, while contesting the plaintiff's position, never thereafter infringed. Nimmer writes this related to the problem of attorney's fees in this type of case:

> "In the first place, it is to be noted that Section 116 does not authorize an award of the actual attorney's fee, whatever it may be, but only of a reasonable attorney's fee. It has been said that such an award should be made sparingly and in a modest amount, and one court has held that a reasonable attorney's fee under Section 116 was an amount less than such fee as would be proper between the client and his attorney. * * * Notwithstanding these limitations, to which one suspects all courts do not adhere, attorney's fees have at times been in rather substantial amounts." (§ 161)

Some courts have held that no award should be made in this area unless there is some element of moral blame against the losing party—either where the infringement is deliberate or there has been some continuation of it after notice. As an indication of the range, from a point of view of principle, at least one circuit has held that attempts "to inflate and exaggerate the claims" should result in a denial, even though substantial damages have been awarded. See Advertisers Exchange v. Hinkley, 199 F.2d 313 (8th Cir. 1952). The overall objective, whether it be considered from a point of view of damage or whether it be considered from a point of view of attorney's fee award, is, not to punish an infringing defendant, but to "impose a liability * * * and vindicate the statutory policy * * * even for uninjurious and unprofitable invasions of copyright." See F. W. Woolworth Co. v. Contemporary Arts, supra, 344 U.S. at 233, 73 S.Ct. at 225.

If one would be statistical about it, Nimmer's work contains the necessary statistics at Section 161. Of course, statistics are of little, if any, value in the problem—the problem cannot be disassociated from the context in which it arises.

Within the principles stated above and overall to accomplish the objective stated above, it is determined that it is just to award to the plaintiff as the reasonable attorney's fee to be included in the costs herein of $10,000.00.

A proposed judgment consistent herewith may be presented. It may, of course, contain the prayed-for injunction.