**ROBERT R. JONES ASSOCIATES, INC., Plaintiff,**

v.

**NINO HOMES, Michele Lochirco and Deibele–Ginter, Jointly and Severally, Defendant.**

**No. 83–CV–3016–DT.**

United States District Court, E.D. Michigan.

April 15, 1987.

---

Jerold I. Schneider, Cullen, Sloman, Cantor, Graver, Scott & Rutherford, Detroit, Mich., for plaintiff.

Robert A. Miller, Southfield, Mich., Stephen R. Levine, Farmington Hills, Mich., Arnold S. Weintraub, Troy, Mich., for defendant.

## OPINION

HACKETT, District Judge.

Plaintiff, Robert R. Jones Associates, Inc. ("Jones"), has alleged that the defendants have jointly and severally violated the Copyright Act, 17 U.S.C. § 101 et seq., by duplicating plaintiff's copyrighted architectural drawings and using them in the construction of seven houses built and sold by defendant Nino Homes ("Nino").

Jones is a Michigan corporation engaged in the business of designing, building and selling custom houses, with its principal place of business in West Bloomfield, Michigan.

Defendant Nino is a Michigan corporation, with its principal place of business in Rochester, Michigan. It also is engaged in the construction and sale of new houses. Defendant Michele Lochirco ("Lochirco"), a resident of Utica, Michigan, is the principal

162

shareholder and president of Nino and its chief executive and operating officer.

Defendant Deibele–Ginter was a partnership established under Michigan law in 1966 by Richard Deibele, a licensed architect, and his business partner Clifford Ginter. The business of the partnership had been conducted out of the partners' respective homes during the eight month period preceding Ginter's death, and the consequent dissolution of the partnership on June 11, 1983.

In 1980 Jones had engaged an architect to prepare a complete set of architectural drawings, including floor plans and elevations, for a house Jones referred to as the "Aspen". These plans were based on concepts generated by Robert Jones, the sole shareholder of Jones corporation. Thereafter Jones constructed two model houses in accordance with his Aspen plans, one in Grosse Pines subdivision in Rochester, Michigan, the other in Maplewood North subdivision in West Bloomfield, Michigan.

In June, 1983, Jones obtained Certificates of Copyright Registration of the complete set of architectural plans for the Aspen and of an abridged technical drawing which is a photographic reduction of the Aspen floor plans. Jones has alleged that the defendants duplicated the abridged plan in order to create their own set of architectural plans, and that they further duplicated and distributed such infringing plans. Jones further claims that defendants' duplication and use of these plans in their construction of houses within a subdivision situated less than two miles from Grosse Pines where plaintiff was constructing and selling his houses, constitutes a violation of the Copyright Act. Jones seeks damages arising out of defendants' infringement, costs and attorney fees, and an injunction prohibiting future infringement.

■ As drawings of a "technical character", architectural drawings are recognized as protected by the copyright laws. 17 U.S.C. § 5(i). *Imperial Homes Corp. v. LaMont*, 458 F.2d 895 (5th Cir.1972). Basically, two elements are necessary for a plaintiff to prevail in an action for infringe-

ment: ownership of a valid copyright by the plaintiff and copying of it by the defendants. *Wickham v. Knoxville International Energy Exposition, Inc.*, 555 F.Supp. 154 (N.D.Tenn.1983), aff'd, 739 F.2d 1094 (6th Cir.1984). In order to prove that the work was copied, plaintiff must show that the defendants had access to the plaintiff's work and that there is substantial similarity between the copyrighted work and the infringing work. 3 Nimmer, *The Law of Copyright*, 13.02. Substantial similarity does not require "identity". Sufficient similarity is found where the work is recognizable by the ordinary observer as having been taken from the copyrighted source. The regulations of the copyright office include an architect's blueprint as a work registerable within this class. 37 C.F.R. § 202.12(a). *The Herman Frankel Organization v. Tegman, et al.*, 367 F.Supp. 1051 (E.D.Mich.1973).

■ Having weighed the testimony and reviewed the exhibits presented at trial, this court finds that the elements necessary for a successful copyright infringement claim are present in this case. Jones has complied with the registration requirements of the Copyright Act. Based upon documentation, Robert Jones' testimony and lack of any substantial evidence to the contrary, the copyrights are valid. Moreover, it is clear that Jones has taken significant steps to protect the integrity of its floor plans, e.g. posting notices in its model houses to the effect that its floor plans are subject to copyright, requiring potential customers who receive a copy of the abridged floor plans and customers who are provided with a complete set of architectural plans to acknowledge plaintiff's copyrights in a signed statement.

The court also finds based on all the facts that all defendants had access to Jones' copyrighted floor plans. Jones and Nino were building houses within the same neighborhoods and subdivisions. At the time Jones was developing Grosse Pines and building its Aspen model, Nino was building houses less than two miles away in Quail Ridge. Model houses were open to the public and frequently potential custom-

ers visited consecutively the neighboring subdivisions. Further, the striking similarity of these plans alone support a finding of access.

The record indicates Deibele–Ginter was hired by Nino to provide architectural services during this period. In early 1983 Deibele–Ginter initiated plans for a model Nino referred to as the "Cambridge". The plans ultimately rendered by Deibele–Ginter were for a house identified as the "Riverside." Credible testimony established that after Nino had commissioned plans for a new model, but before construction had begun, Ginter showed Deibele a floor plan included in a brochure which Michele Lochirco had given Ginter with instructions to copy for use by Nino Homes. The court finds that plaintiff's exhibit 10 found in the Deibele–Ginter file is a copy of plaintiff's plans used by Deibele–Ginter and provided to Ginter by Michele Lochirco.

It is readily apparent that the plan Lochirco supplied to Ginter was a photocopy of the abridged Aspen floor plan from which Jones' identification and copyright notice had been obviously deleted. Indeed, the blank space, where Jones' identification had appeared on its brochure, would have signaled to any observer, let alone a skilled professional, that identification had been deliberately obscured. Plaintiff's exhibits 76 and 77 are tracings of the Riverside plan, blueprint size, and clearly evidence copying by defendants of the Aspen plans. The principals of both Nino and Deibele–Ginter were experienced in their respective professions. The court finds that they were on notice in this fact situation that the photocopy was made from identifiable copyrighted material.

■ Deibele admitted having copied 80% of the Aspen plan in rendering drawings for the Riverside. He maintains that he personally was unaware that the material was subject to copyright protection. Nevertheless, it was established that his partner Ginter was well aware of the questionable source of the Riverside concept. Ginter's knowledge, while he acted in his capacity as a partner in Deibele–Ginter, must be attributed to the partnership.

M.C.L.A. § 449.9; see *Grosberg v. Michigan National Bank–Oakland*, 420 Mich. 707, 362 N.W.2d 715 (1984). Further, Deibele testified he worked with the drawings, did some lettering and modifications. Unfortunately, Lochirco, who attempted to negate his role in all of this, was not a credible witness. The record is replete with his conflicting testimony.

The record supports a finding that Deibele–Ginter was aware of Nino's intention to build multiple houses using the Riverside plans. Deibele–Ginter provided multiple sets of the Riverside plans to Nino in March, 1983. Deibele prepared plans for a slightly smaller version of the Riverside even after Ginter's death.

Robert Jones first learned of Nino's duplication of the Aspen in early June, 1983, when it was reported to him by a potential customer. He subsequently reviewed the building permit issued to Nino by Rochester Hills Township and recognized the plans filed with the township by Nino as an exact copy of his plans for the Aspen. Robert Jones then registered the complete plans and abridged plans on June 22, 1983, and June 28, 1983, respectively. Immediately thereafter he sent a letter to Nino demanding that construction of the Riverside model cease. Nino responded to Jones' letter with a general denial. Jones then commenced suit on July 25, 1983, seeking a preliminary injunction prohibiting Nino from constructing the Riverside model from the duplicated plans.

### Settlement

■ The parties were encouraged by the Honorable Ralph Guy, from whose docket this matter was reassigned to this court, to settle their dispute. On August 10, 1983, a purported agreement was reached between Jones and Nino which required Nino to make specific alterations in its existing Riverside model and to modify its plans for construction of additional Riversides. The proposed alterations were documented in a set of drawings which were approved and signed by both Robert Jones and Michele Lochirco.

Defendant Nino Homes maintains that all of the modifications indicated in the drawings were implemented and that liability is precluded by the existence of a binding settlement agreement. Robert Jones has testified that he did not sign a formal settlement agreement because he was not convinced of Michele Lochirco's truthfulness. This court recognizes the parties' efforts to arrive at a settlement agreement. However, the court must conclude based on the record and the testimony in this case that there was no settlement because there was no meeting of the minds between Jones and defendants as to the ultimate result of settlement negotiations, and because no settlement document was ever executed by the parties.

Based on the record in this case, this court finds the defendants jointly and severally liable for the losses/damages sustained by plaintiff in this case.

### Damages

The copyright statute and case law leave to the court's discretion the determination of damages within the parameters set forth in 17 U.S.C. § 504.

The statute provides alternatively for an award of an amount equal to the sum of the copyright owner's actual damages plus the infringer's profits attributable to the infringement or, at the election of the copyright owner, specified statutory damages.

■ "A rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy." *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952). In this case Jones seeks its actual damages attributable to defendants' activities after the date on which the copyrights were registered. Having reviewed extensive testimony as to the number of Riversides built by defendants after Jones had obtained registered copyrights for the Aspen plans, the court concludes that damages in this case should be calculated based upon the sale by Nino of the following houses: Lots 11 and 123 in

Quail Ridge; Lots 14A, 20A, 61A and 75A in Clinton River Valley; and, Lot 22 in Oxford Estates. Testimony at trial indicated that the house on Lot 75A was identified on the building permit as an Ambassador rather than as a Riverside, but it is apparent that at least 50% of the design of that house was derived from the Aspen plan.

■ Jones was engaged in direct competition with Nino in the construction and sale of houses in geographical proximity such that each sale of a Riverside by Nino was the loss of an Aspen sale by Jones. Admittedly, no one can be absolutely certain that the seven houses at issue here would have been purchased from Jones had no infringing product been put on the market. Nevertheless, one can reasonably find based on the proofs in this case that there were purchasers and a demand for this particular kind of house in this geographic area. Once a copyright holder establishes with reasonable probability the existence of a causal relationship between the infringement and a loss of revenue, the burden properly shifts to the infringer to show that this damage would have occurred had there been no taking of copyrighted expression. *Harper & Row Publishers, Inc., et al. v. Nation Enterprises, et al.*, 471 U.S. 539, 105 S.Ct. 2218, 2234, 85 L.Ed.2d 588 (1985). Although Jones might not have made every one of Nino's sales, once Jones established that it had been damaged by defendants' infringement, the burden shifted to the defendants to prove that purchasers of Riversides would not have purchased Aspens in the same geographic vicinity. *Stevens Linen Associates, Inc. v. Mastercraft Corp.*, 656 F.2d 11, 15 (2d Cir.1981). Defendants failed to meet this burden. Accordingly, damages in this case will be determined based upon the seven houses that it must be presumed Jones would have sold absent the infringement.

Jones has proposed as the measure of damages its anticipated gross profit attributable to the average sales price of an Aspen during the period of time in which these events took place. Robert Jones testified that the average sales price of an

Aspen in 1984–85 was approximately $218,-000, and that the gross profit on each sale was generally 35%, $76,300. Jones testified that had Nino not built the infringing houses, Robert Jones, Inc. would have been able to build these houses without additional office, supervisory, professional or architectural costs, thus generating a 35% profit on each.

Gross profit on the sale of each Aspen is determined by subtracting from the sales price direct costs attributable to each specific construction site. Direct costs include land, labor and materials. But, gross profit also includes operating costs relative not to a specific construction site, but to the entire venture: salaries, insurance, marketing and advertising costs, job site supervision and related administrative expenses. Therefore, the 35% gross profit proposed by plaintiff as a measure of damages does not accurately reflect Jones' loss as a result of defendants' infringement.

Jones has proposed, alternatively, that damages be determined according to the relative value of the floor plans, which value Jones estimates, in light of comments by prospective customers and industry analysts, to be one third of the gross profit earned on each sale of an Aspen. The court declines to implement this speculative measure of damages.

Having carefully reviewed the testimony of Robert Jones on direct and cross examination, the court finds the most credible indication of actual damages to be the "owners profit" on the sale of an Aspen, after allowance for all costs, direct and indirect. In 1983, the records in this case establish that the direct costs attributable to construction of an Aspen were 61% of the sales price, indirect costs were 23%. Thus, the owners of plaintiff, a closely held corporation, earned approximately 16% of the total price on each sale. In 1984 direct costs were 65%, indirect costs 21% and profits to the owners 14%. Based on the above, the court concludes that the best measure of actual damages sustained by plaintiff is an amount equal to 15% of the gross profit on the average sale of an Aspen. Using an average sales price of $218,000, this court awards $32,700, for each of the six sales it must be presumed plaintiff lost as a result of defendants' infringement, and $16,350 for Lot 75A, a total amount of $212,550.

Plaintiff also is entitled to recoup from defendants Nino Homes and Michele Lochirco, jointly and severally, the amount of defendants' profits attributable to the infringement. The burden of proof as to this portion of damages is set forth in 17 U.S.C. § 504(b):

> In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

Plaintiff has established that Nino Homes built and sold seven houses, the sales of which are the result of defendants' infringement of plaintiff's copyrights. The statements of Michele Lochirco and documents submitted with respect to these sales include numerous inconsistencies. Notwithstanding the discrepancies in the testimony of Michele Lochirco, his employees and agents regarding costs incurred and profits realized by Nino and Michele Lochirco from the sale of seven Riversides, the court has relied on the figures provided by Nino in defendants' exhibit 208 as the basis for calculating defendants' profits. The court finds that an appropriate amount of defendants' profits on sale of seven Riversides may be determined from the average profit on the sales of five houses as acknowledged by defendants in the analysis set forth in defendants' exhibit 205. The average profit on each sale is $13,280. Defendants' profits on the seven houses sold as a result of infringement of Jones' copyright is awarded to plaintiff in the amount of $92,960.

### Attorney Fees

Pursuant to 17 U.S.C. § 505, Jones seeks an award of costs and attorney fees from defendants Michele Lochirco and Nino Homes only. The purpose of such an

award is to ensure that all litigants have equal access to the judicial system to vindicate their statutory rights. *Blumcraft of Pittsburgh v. Newman Bros., Inc.*, 337 F.Supp. 859, 863 (S.D.Ohio 1971). Such an award is warranted in these circumstances. It must be limited, however, to amounts attributable to infringement activities commenced after the date on which Jones' copyrights were registered and the defendants put on notice, in this case June 28, 1983. 17 U.S.C. § 412(1).

### Injunctive Relief

In addition to damages, plaintiff is entitled to a permanent injunction pursuant to 17 U.S.C. § 503(b). Defendants, their agents, employees and all those in privity with them are enjoined from infringing plaintiff's copyrights for the Aspen model house. Any and all plans or photocopies prepared by defendants or their associates made in violation of Jones' exclusive copyrights, together with any negative or other means by which such plans might be duplicated, shall be returned to plaintiff or immediately destroyed.

In summary,

IT IS ORDERED that a judgment be entered for plaintiff against all defendants, jointly and severally, as set forth in this opinion for damages in the amount of $212,550.

IT IS FURTHER ORDERED that judgment be entered against defendants Nino Homes and Michele Lochirco, jointly and severally, for the additional amount of $92,-960, plus costs and attorney fees, for the reasons stated in the opinion. The court retains jurisdiction to determine the actual amount of costs and attorney's fees. Plaintiff has 30 days from the date of this order in which to file documentation supporting an appropriate amount.

Injunctive relief is granted as set forth in this opinion.

The court having found defendants jointly and severally liable as set forth above, and having found that neither defendants Nino and/or Michele Lochirco nor Deibele–Ginter has met their burden of proof on their counterclaim or cross-claims, the court denies all relief sought therein.